## Case No. 11,650.

### REED v. REED et al.

[12 Blatchf. 366; 1 Ban. & A. 515; 8 O. G. 193;
Merw. Pat. Inv. 269.] [1]

Circuit Court, N. D. New York.   Oct. 13, 1874.

PATENTS—NOVELTY—HEAD LININGS FOR BARRELS.

1. The letters patent granted to George A. Reed, March 11th, 1873, for an "improvement in head linings for barrels," are invalid.

2. The improvement intended to be covered by the claim of that patent, which is, "As a new article of manufacture, barrel head linings prepared in the manner specified, when bundled as shown and described," is not the proper subject of a patent.

3. The patentee merely adapted the same appliances to the manufacture of head linings that had before been used in the manufacture of hoops, and thereby produced a crimped machine-made hoop on a small scale. but of uniform width and thickness, and having rectangular ends, adapted to fit inside of the staves of a barrel, and to support the chime of the barrel, hoops as well as head linings having before been made by machinery, and hoops having previously been crimped or permanently bent before setting.

4. The only merit in bundling the head linings is, to render the article more attractive to purchasers, and more convenient for the purposes of sale.

[This was a bill in equity by George A. Reed against Louis Reed and George Folts for the infringement of letters patent No. 136,763, granted to plaintiff March 11, 1873.]

James A. Allen, for plaintiff.

John Van Voorhis, for defendants.

WALLACE, District Judge. The patent which it is alleged the defendants have infringed was issued to the complainant on the 11th of March, 1873, for an "improvement in head linings for barrels." The specification describes the subject of the patent as follows: "My improvement relates to the head linings used on sugar, flour, fruit, salt, and other kinds of slack barrels, and consists in forming the lining by cutting a straight splint from the lumber, and subsequently crimping it in a suitable machine, by which it is bent to the curved shape of the barrel to which it is to be applied, the object of the improvement being to obviate the objections to the common head linings, of requiring them to be soaked before use and bent as they are applied, necessitating the driving of a large number of nails to retain them when dry, and, also, the want of accurate fitting against the barrel head or chime, together with frequent splitting after having been applied, in consequence of having been bent the wrong way of the grain." After describing the mode of manufacture, the specification proceeds: "When so crimped, they are put in square bundles of two hundred

and fifty or five hundred, and tied or wired for transportation and use." The claim, after stating that the applicant is aware that hoops for barrels have been crimped or permanently bent before setting, prior to his invention, and disclaiming any right predicated upon this process, is as follows: "What I claim and desire to secure by letters patent is, as a new article of manufacture, barrel head linings prepared in the manner specified, when bundled as shown and described."

It appears, by the proofs, that the head lining is a piece of wood applied to the chime of a barrel, by the packer, after the barrel has been filled for shipment, for the purpose of supporting the chime, and to retain the barrel head more firmly in its place when subjected to the strain of transportation and handling. It also appears, that, prior to the introduction of linings similar to those described in the specification, it had been the practice of packers and shippers to make head linings by splitting the ordinary hoop and nailing the pieces on the head of the barrel next to the chime. It was ordinarily done by taking an old hoop, or part of one, and splitting it in two parts with an adze or a knife, and required only sufficient skill to secure width sufficient to hold a nail, when driven into it, without splitting, and length sufficient to afford support to the chime. The pieces, when cut in this way, were almost necessarily somewhat irregular in width, were rough in appearance, frequently split when nails were driven into them, and were, in short, a crude and simple contrivance to give support to the barrel head, without reference to ornament or taste, and, practically, they met the purpose for which they were used. Subsequently, head linings were made and used as an article of trade, designed to be sold to packers in quantities, to save them the trouble of cutting out their linings as they desired to use them. They were made of oak, split out by hand, the form of the lining following the direction of the grain of the timber, and the width and thickness being more or less variable according to the degree of care used in cutting them, and the clearness of the grain of the timber. In using them, it was quite customary to soak or steam them, as then they were more readily bent to the curve of the barrel, and less frequently split when nails were driven into them. Subsequently, machine made linings were introduced, and became an article of trade, which were straight and of uniform width and thickness, and differed in no respect from those of which the complainant now claims to be the inventor, except that the latter are crimped. The effect of crimping them, as is alleged in the specification, is to corrugate the grain of the wood, thereby bending the head lining so as to conform proximately to the curved head of the barrel, thus obviating partially the tendency of the timber to

split when nails are driven into it, and dispensing measurably with the necessity of soaking or steaming the linings before using them. It is quite apparent, however, that soaking or steaming the complainant's linings would lessen their liability to split, and, even then, splitting could not be entirely prevented. It is also obvious, that the value of the complainant's linings, as of those previously in use, depends largely, if not mainly, on the quality of the timber used for their manufacture.

That the complainant's head linings are an improvement in the article which had been used prior to their introduction, and, as such, have secured the approval of the trade and become a valuable commodity of manufacture and sale, must be conceded; but I am unable to arrive at the conclusion that such improvement is the proper subject of a patent. The proofs establish, beyond controversy, that hoops had been made by machinery, as well as head linings, and were an article of trade prior to the alleged invention of the complainant; and the specification of the complainant disclaims any discovery of the process of crimping such hoops. The complainant adapts the same appliances to the manufacture of head linings, that were used in the manufacture of hoops, and he thereby produces an article which is, in all its essential features, a crimped machine-made hoop on a small scale, except that it is of uniform width and thickness, and has rectangular ends. It is a hoop adapted to fit inside, instead of outside, the staves of the barrel, and to support the chime instead of the body of the barrel. Ignoring, as must be done, the use of the machine for cutting and crimping the timber, the article is produced by cutting a block of timber into pieces of such size and shape as will constitute a hoop of reduced dimensions, uniform in thickness and with rectangular ends. The quality of invention is not called into exercise by adopting, to make head linings, the machine for making and crimping hoops; and what remains of the process is accomplished by the most simple mechanical skill.

Having arrived at the conclusion that the patent cannot be sustained so far as it rests upon the claim for head linings, "as an article of manufacture, when prepared in the manner specified," it remains to consider whether it can be supported upon the additional claim, as "an article of manufacture, when bundled as shown and described." The portion of the specification relating to the bundling of the linings is as follows: "I accomplish another result, that is, that I can pack the linings in square bundles ready for the market, and that each lining will always retain its circular form, owing to the corrugated condition of the fibres, and, at the same time, I dispense with soaking." It will be observed that the corrugation of the fibres dispenses with soaking the linings,

and is accomplished by the process of crimping the timber; and, in this regard, the linings do not differ from the hoops. Nothing enables the linings to retain their circular form when bundled, aside from the crimping, except that they are of uniform size and thereby fit compactly together. The hoops could be bundled as well as the linings, and are usually transported in bundles, but not so tidily or compactly as the linings, owing to their bevel and greater length. The sole merit of this feature of the improvement is, that it renders the commodity more attractive to purchasers, and more convenient for the purposes of sale. There is nothing in this result that is patentable. If the subject of the patent was a machine which accomplished the result, of manufacturing a product more convenient for transportation and sale, as an article of trade, than that which had preceded it, such result might be important and controlling as determining the utility of the invention. But no such test is applicable when the product itself is the subject of the patent. Langdon v. De Groot [Case No. 8,059].

Upon the whole case, therefore, my conclusion is, that the complainant has only produced an article which is the result of more mechanical skill and care in its manufacture than that previously used and sold, and that this result did not involve the faculty of invention. The case is analogous to that of Union Paper Collar Co. v. Van Deusen [Case No. 14,395], and Rubber Tip Pencil Co. v. Howard [Id. 12,102].[2] The bill must, therefore, be dismissed, with costs.

[2] [These two cases were affirmed by the supreme court in 23 Wall. (90 U. S.) 530, and 20 Wall. (87 U. S.) 498, respectively.]

